UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIRLEY A. ARCHER,

    Plaintiff,

vs.                                      CASE NO.: 6:03-cv-1235-Orl-18KRS

JO ANNE B BARNHART
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff Shirley Archer's ("Archer") Complaint (Doc. 1, filed August 27, 2003) and Memorandum in Support (Doc. 18, filed September 20, 2004), to which Defendant responded in opposition (Doc. 20, filed November 19, 2004). Archer requests this Court to reverse the decision to deny benefits by the Commissioner of Social Security ("the Commissioner") or, in the alternative, to remand the case back to the Administrative Law Judge ("ALJ"). Magistrate Judge Spalding issued a Report and Recommendation ("R&R") recommending that the Commissioner's decision be reversed and remanded for further proceedings (Doc. 24, filed July 11, 2004), to which Defendant filed an objection (Doc. 25, filed July 15, 2004), and Archer responded (Doc. 26, filed July 28, 2004). This Court respectfully declines to adopt the Magistrate's recommendation and affirms the Commissioner's decision to deny benefits.

## I. BACKGROUND

On August 25, 1999, Archer applied for disability benefits under the Supplemental Security for the Aged, Blind and Disabled Program, 42 U.S.C. § 1381, *et seq.*, and the Federal

Old Age, Survivors and Disability Insurance Programs, 42 U.S.C. § 1382, *et seq.*, alleging a disability onset date of October 1, 1997. The Social Security Administration ("SSA") denied Archer's applications both initially and on reconsideration. At Archer's request, the ALJ held a hearing on January 18, 2001. In a March 26, 2001, decision, the ALJ made the following relevant findings: (1) Archer had lumbar degenerative disc disease and obesity, which are "severe" impairments, but they did not render her disabled under the Social Security Act (Record at 25); (2) Archer's subjective complaints were disproportionate to the medical evidence and were not fully credible (id.); and (3) Archer had the residual functional capacity to perform the physical exertion and nonexertional requirements of light work (id.). Based on Archer's capacity for light work, age (forty-three), education (eleventh grade), and work experience, the ALJ concluded that Archer was not under a "disability" as defined by the SSA. (Id.)

Archer appealed the ALJ's decision and submitted new evidence, including an October 18, 2002 MRI showing bulging and herniated discs, that was not before the ALJ. The Appeals Council reviewed the new evidence, found no basis for changing the ALJ's decision, and held that the new evidence related to a time period after the ALJ made his decision and did not affect the determination to deny benefits.[1]

## II. DISCUSSION

Archer raises three issues: (1) the ALJ made an incorrect pain determination and failed to consider the opinions of Archer's treating physicians; (2) the ALJ's reliance on the Medical

---

[1] Since filing this case, Archer again applied to the SSA for disability benefits, alleging a disability onset date of October 18, 2002. The ALJ found Archer to be disabled as of that date. (See Doc. 22.)

2

AO 72A
(Rev.8/82)

Vocational Guidelines was inappropriate: and (3) the Appeals Council incorrectly determined that evidence submitted was not new and material. The Court now addresses these issues in turn.

A. ALJ Review

"An ALJ's decision will be reversed only if the decision is not supported by substantial evidence." Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations and citation omitted). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the Commissioner's decision is supported by substantial evidence. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

1. ALJ's Pain Determination

Archer first argues that the ALJ made an incorrect pain determination by failing to consider the opinions of Archer's treating physicians. "[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (internal citations omitted). While the ALJ has

discretionary power to determine the credibility of testimony, that power "is limited by his obligation to place on the record explicit and adequate reasons for rejecting [the] testimony." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." Wilson, 284 F.3d at 1225.

Although the ALJ did not explicitly cite the three-part test, the Court finds that the test was properly applied. Wilson v. Barnhart, 284 F.3d at 1225-26 (11th Cir. 2002) ("Although the ALJ does not cite or refer to the language of the three-part test . . . his findings and discussion indicate that the standard was applied.") First, the ALJ did, in fact, consider the opinions of Archer's treating physicians with respect to pain diagnoses and treatment. Indeed, an entire paragraph is dedicated to the chronic back pain diagnoses of Doctors Wasserman and Gerber—two of Archer's treating physicians. (Record at 22, ¶ 3.) However, despite the chronic back pain diagnosis, the ALJ noted that Archer received "conservative" medical management for pain and Archer's latest physical exam[2] was "normal" except for pain and tenderness in the greater trochanter. The ALJ also considered Dr. Gerber's nerve conduction studies, which were found to be "unremarkable with no indication for the cause of the claimant's subjective pain complaints." (Id. at 23, ¶ 9: 212-14.)

Second, the ALJ adequately explained why he found Archer's testimony to be lacking credibility. The ALJ referred to Dr. Nitin Haté's independent physical exam on Archer, which was unremarkable except for obesity and a fifty-percent reduction in range of motion in the

---

[2] The exam was performed by Dr. Gerber. (Record at 207.)

4

lumbar spine. With respect to pain, Dr. Haté reported that Archer had "significant pain complaints," but that there was a "significant *subjective element* in range of motion and pain perception." (Record at 23, ¶ 1) (emphasis added.) In conclusion, the ALJ found that Archer's impairments caused some pain and posed some restrictions on her activities, "but not to the frequency, duration and extent she testified to or that would prevent her from performing substantial gainful activity." (Id. at 4, ¶ 4.)

The ALJ fulfilled his obligation to provide explicit and adequate reasons for finding that Archer's testimony lacked credibility. Dr. Haté's report, mentioned above, provides direct support for this conclusion. Further, by considering the "unremarkable" results from (a) Archer's most recent exam; (b) Dr. Gerber's nerve conduction studies; and (c) Dr. Haté's independent examination, the ALJ was well within his discretion to conclude that Archer's complaints were not fully supported by the medical record. Although the ALJ may not have addressed the diagnoses of treating physicians Wasserman, Gerber, and Ham-Ying to the extent that Archer would have preferred, the ALJ was not required to do so. The various references to pain made by Archer's treating physicians, detailed in Archer's brief (Doc. 18 at 8-10), fail to render the ALJ's reasoning or conclusion insufficient. At this juncture, therefore, Archer has failed to show that the ALJ's decision was not supported by substantial evidence.

2. The Medical Vocational Guidelines

Archer next argues that the ALJ did not consider nonexertional impairments (such as pain)[3] when using the Medical Vocational Guidelines ("the Guidelines") to determine whether

---

[3] The Eleventh Circuit defined the terms exertional and nonexertional as follows:
The terms exertional and nonexertional describe types of functional limitations or restrictions

5

Archer qualified as disabled under the Social Security Act. Once an ALJ has determined the claimant's residual functional capacity and ability or inability to return to past relevant work, the ALJ may use the Guidelines to determine whether other jobs exist in the national economy that a claimant is able to perform. Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). Exclusive reliance on the Guidelines is not appropriate, however, when the claimant is either: (a) unable to perform a full range of work at a given residual functional level; or (b) suffers nonexertional impairments that significantly limit basic work skills. Id. When nonexertional impairments are not found to be credible, reliance on the Guidelines is appropriate. Martin v. Railroad Ret. Bd., 935 F.2d 230, 234 (11th Cir. 1991).

In this case, the ALJ clearly found that Archer had: (a) the residual functional capacity to perform the exertional and nonexertional requirements of light work (Record at 24, ¶ 6; 25, ¶ 5); (b) complaints of pain and restrictions that were not fully credible (Id. at 24, ¶ 4; 25, ¶ 4); and (c) some pain and restrictions, but not to the extent that she would be prevented from performing substantial gainful activity. (Id. at 24, ¶ 4.) In light of these findings, this Court must conclude that the Phillips test was satisfied and the ALJ was not precluded from relying on the Guidelines.

B. New and Material Evidence

Archer's final argument is that the Appeals Council incorrectly determined that

---

resulting from a medically determinable physical or mental impairment. Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling. Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. Phillips, 357 F.3d at 1242 n.11 (citing Social Security Ruling 96-4, 61 Fed. Reg. 34488 (July 2, 1996)).

AO 72A
(Rev.8/82)

Archer's new evidence[4] was not new and material. The Appeals Council considered Archer's new evidence and denied review because the evidence did not relate to the period on or before the date of the ALJ's decision. (Record at 9, ¶ 2.) See 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.")

Pursuant to 42 U.S.C. § 405(g),[5] a district court may remand a case to the SSA for consideration of newly discovered evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998). Remand is appropriate if Archer "show[s] that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." Id. Further, the new evidence must relate to the time period before the ALJ's decision. Id.; Beech v. Apfel, 100 F. Supp. 2d 1323, 1335 (S.D. Ala. 2000).

Archer contends that an October 18, 2002 MRI and a related November 11, 2002 diagnosis of neck pain due to degenerative disc disease, disc displacement, and facet antropathy

---

[4] The new evidence consists of records from the Orlando Foot and Ankle Clinic (dated November 14, 2001 through October 24, 2002) and Dr. Carlos Jassir of the Pain Management Center of West Orange (dated June 2, 2002 through October 18, 2002).

[5] Sentence six of 42 U.S.C. § 405(g) provides, in pertinent part, that "the court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

7

constitutes new and material evidence requiring remand. (Doc. 18 at 10-12; Record at 324.)[6] Dr. Carlos Jassir[7] made the diagnosis and he found the MRI to reveal a disc bulge at C3-4 indenting the anterior thecal sac, a focal posterior central herniated nucleus pulposus and spondylosis indenting the anterior thecal sac at C4-5, a disc bulge and spondylosis indenting the anterior thecal sac at C5-6, and disc bulge and spondylosis indenting the thecal sac at C6-7. (Doc. 18; Record at 332-33.) Archer argues that this information provides the needed medical support for her testimony of pain, which the ALJ found to be not fully credible.

As an initial matter, the evidence is new in that it was established after the ALJ rendered his decision on March 22, 2001, and it is noncumulative in that there was no diagnosis of bulging or herniated discs for the ALJ to consider.

Archer fails, however, to make a showing of good cause. Indeed, Archer fails to even address the issue in her memorandum of law. (See Doc. 18 at 10-12.) It is true that the Magistrate hints at the possibility that Archer may have had cost issues or insurance difficulties in obtaining an MRI (Doc. 8 at 18 n.27). It is also true that Archer states, in her response to the Commissioner's objection to the R&R, that "there was some indication in the record that [Archer] did not have insurance that would pay for the MRI." (Doc. 26 at 2.) But Archer fails to provide an actual reason—beyond mere speculation—as to why she was in some way prevented from obtaining an MRI prior to the ALJ's decision. Good cause is not established simply because the new evidence did not exist at the time of the administrative hearing. Beech,

---

[6] Archer makes no argument, and the Court does not find, that the new evidence from the Orlando Foot and Ankle Clinic constitutes new and material evidence. (Record at 288-315.)

[7] Treating physician Dr. Michael Ham-Ying referred Archer to Dr. Jassir on June 20, 2002. (Record at 315.)

8

100 F. Supp. 2d at 1335. It was Archer's burden to prove the existence of a disability at the hearing before the ALJ,[8] just as it is now Archer's burden to show good cause as to why the new evidence was not obtained before the ALJ rendered his decision.

In this instance, the MRI was taken nearly nineteen months after the ALJ's final determination to deny benefits. In addition to providing no justification as to why the MRI was not obtained at that time, Archer provides no explanation as to why more than a year-and-a-half passed before the MRI was performed. Claimants "must 'demonstrate some justification for the failure to acquire and present [new evidence] to the Secretary.'" Beech, 100 F. Supp. 2d at 1335 (quoting Brown v. Schweiker, 557 F. Supp. 190, 192 (M.D. Fla. 1983).

The Eleventh Circuit stressed the importance of the good cause requirement in the following way:

> [T]he good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process. The requirement was designed to prevent claimants from attempting to withhold evidence with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled. The good cause requirement was designed to avoid the danger of encouraging claimants to seek after-acquired evidence, and then use such evidence as an unsanctioned backdoor means of appeal. Milano v. Bowen. 809 F.2d 763, 767 (11th Cir. 1987).

Thus, because Archer fails to make a showing of good cause, there is nothing to keep this Court from considering this action as an "unsanctioned backdoor means of appeal." Id. It is plain that there is need for an efficient, final determination of disability claims and that reopening such a determination should be narrowly circumscribed. This policy is articulated well in Brown:

---

[8] Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").

Congress has expressed a desire that disability claims should be disposed of quickly, so that truly needy claimants may have their cases processed without the backlogs caused by needless remands for 'new evidence.' At some point in time, there must be a definite record upon which the Secretary can make a decision. If remands were permissible every time a party gathered new evidence which might affect the outcome of his or her case, no determinations would ever occur. In order to facilitate the speedy disposition of meritorious claims, "new evidence" remands should be narrowly circumscribed. Brown, 557 F. Supp. at 192.

Without any showing of good cause, this Court must conclude that remand for the consideration of new evidence is inappropriate. See, e.g., Falge, 150 F.3d at 1323-24 (finding that Section 405(g) remand was inapplicable where claimant had "neither shown nor alleged good cause for his failure to introduce [the new evidence] during the hearing before the ALJ").[9] The final decision of the SSA is accordingly affirmed.

In addition to failing the good cause requirement, Archer fails to succeed on the issue of materiality. A significant factor to the ALJ's decision, Archer argues, was the finding that Archer's subjective complaints were disproportionate to the medical evidence, and therefore were not fully credible. Archer believes that the diagnosis of bulging and herniated discs provides the needed evidence to support her testimony of pain and creates a reasonable possibility that the ALJ will find her disabled.

---

[9] Scatorchia v. Comm'r of Soc. Sec., No. 04-3626, 2005 WL 1400363, at *4 (3rd Cir. June 15, 2005) (finding that claimant failed to show good cause when no explanation was offered as to why the new MRI evaluation and observations by new physicians were not obtained for the ALJ hearing, stating that "in circumstances such as these, we are mindful that [i]f we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand") (internal quotation omitted); See also Matthews v. Apfel, 239 F.3d 589, 595 (3rd Cir. 2001) ("[W]e believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims."); Martin v. Barnhart, No. Civ.A. 02-3574, 2004 WL 1661207, at *4 (E.D. La. July 23, 2004) (finding that good cause was not established where claimant failed to demonstrate why the new MRI was not incorporated into the record at an earlier date).

To be sure, new evidence concerning the presence of a herniated disc may constitute "new and material" evidence requiring the case to be remanded to the SSA. See Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001) (holding that Vega's newly discovered herniated disc and subsequent corrective surgery contradicted the ALJ's findings regarding the severity of the spinal problem and fulfilled the requirements for remand). The circumstances in Vega, however, are significantly different than the circumstances in this case.

In Vega, the difference in time between the ALJ's decision and the corrective surgery was approximately seven months.[10] In this case, the time difference is nearly nineteen months.[11] The longer the length of time separating the ALJ's decision from the discovery of new evidence, the more necessary it is to show that the new information relates back to the original time period. This is because it becomes increasingly difficult to determine whether the new information is part of the old impairment or part of a new, distinct deterioration or disability. See Newhouse v. Heckler, 753 F.2d 283, 287 (3rd Cir. 1985) ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").

Archer attempts to show that the new evidence relates back to the time of the ALJ hearing by referring the Court to her prior complaints of neck pain. Archer complained of "spasms like electrical shock" in her neck at the ALJ hearing (Record at 44) and of "electric

---

[10]In Vega, the ALJ denied benefits on October 16, 1996. Vega v. Comm'r Soc. Sec., 2:98-cv-293-JES (Doc. 20, at 1). The corrective surgery was performed in May, 1997. Vega, 265 F.3d 1214, at 1218.

[11]The ALJ issued his decision on March 26, 2001, and Archer had the MRI taken on October 18, 2002.

11

shock pain starting in [the] middle of spine up to shoulder area" to Dr. Ham-Ying on May 22, 2000 (Id. at 268). Archer does not, however, provide any medical evidence suggesting that the new evidence relates back to the time period under review by the ALJ. In contrast, the claimant in <u>Vega</u> supplemented the new diagnosis with a retroactive Residual Functional Capacity evaluation. <u>Vega</u>, 265 F.3d 1214, at 1217; <u>see also</u> <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1546 (11th Cir. 1988) (finding that the new evidence was material, in part, because Cannon's treating physician speculated that the claimant's newly discovered physical limitations related back to the date of the alleged onset of disability).

Archer also fails to submit evidence suggesting that the new diagnosis is of such severity that she now stands a reasonable chance of changing the ALJ's denial of benefits. The ALJ's determination was well-founded: Dr. Haté's exam revealed that Archer's range of motion was normal in all joints except for a reduced range of motion in the lumbar spine; Dr. Gerber's physical exam was normal except for pain and tenderness in the greater trochanter with reduced lumbar range of motion; and Dr. Gerber's nerve conduction studies were unremarkable. Notably, there was no indication of reduced motion in the neck region. This and other evidence led the ALJ to determine that Archer was capable of performing light work; that is, she had the ability to, within an eight hour workday, lift twenty pounds occasionally and ten pounds frequently, and stand and/or walk for up to six hours. (Record at 6.) This finding of light work was supported by Archer's own treating physician, Dr. Gerber,[12] and two state agency physicians performing Physical Residual Functional Capacity Assessments

---

[12] Dr. Gerber opined on May 7, 1999 that Archer was capable of working with "light duty restrictions" (Record at 216-17) and on January 4, 2000, Dr. Gerber opined that Archer's work status remained unchanged (Id. at 206).

("PRFCA").[13] Archer fails to submit any medical evidence suggesting that, in light of the new evidence, she is now unable to perform light work. See, e.g., Osborn v. Barnhart, No. 03-M-2529, 2004 WL 2091480, at *3 (D. Colo. 2004) (addressing new evidence consisting of an MRI and a Residual Functional Capacity Evaluation); Fisher v. Sec'y of Health and Human Servs., 818 F. Supp. 88, 91 (D. Del. 1993) (addressing new evidence consisting of an MRI and a neurological report). In Vega, the claimant submitted a physician's evaluation that indicated a "severe spinal problem" and the claimant undertook corrective surgery within seven months of the ALJ's decision. Vega, 265 F.3d 1214, at 1218. In this case, there is no indication that the new diagnosis rises to a similar level of severity. Further, it appears that Dr. Jassir did not find the discovery of the information to be an occasion to comment on Archer's work status, although he had the opportunity to do so. Dr. Jassir made the new diagnosis on a treatment note, which had a work status section at the bottom of the page. (Record at 324.) Dr. Jassir filled out the entire treatment note, but left the work status section blank.

Due to the substantial evidence supporting the ALJ's decision and the nineteen months that separate the ALJ's decision and the discovery of new evidence, this Court finds—like the Appeals Council—that Archer fails to sufficiently relate the new evidence back to the time of the ALJ's decision and fails to show that the new evidence gives rise to a reasonable probability of changing the ALJ's decision. Other courts have held similarly. See Hibbard v. Callahan, No. 96-3125, 1998 WL 93958, at *1 (7th Cir. Feb. 27, 1998) (finding that new medical reports establishing an anxiety disorder were insufficient to show materiality because

---

[13] The PRFCAs were performed on October 1, 1999 (Record at 186-93) and March 29, 2000 (Record at 256-63).

13

the reports failed to "state that [claimant] suffered from a severe anxiety disorder during the period of time that the ALJ was considering"); Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990) (finding that remand was inappropriate in part because the new medical reports spoke only to claimant's current condition, not to his condition at the time his application was under consideration by the SSA); Ward v. Schweiker, 686 F.2d 762, 765 (9th Cir. 1982) (finding that claimant failed to show materiality—despite claimant's argument that the new evidence substantiated a significant part of prior testimony—because claimant failed to provide medical evidence showing that she suffered from the new diagnosis during the period of coverage and did not offer an indication that she would be able to make such a showing on remand).

### III. CONCLUSION

Upon consideration of the report and recommendation of the Magistrate and the objections thereto, and upon independent examination of the entire file, the Court declines to adopt the Magistrate's report and recommendation and **AFFIRMS** the final decision of the Commissioner.

**DONE** and **ORDERED** in Orlando, Florida on this 29 day of August, 2005.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

14